UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN HAGELTHORN,

        Plaintiff,                               Case No. 15-cv-12635
                                              Hon. Matthew F. Leitman

v.

HENRY FORD HEALTH SYSTEM,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (ECF #13)

In this action, Plaintiff Kathleen Hagelthorn, Ph.D. ("Dr. Hagelthorn") claims that Defendant Henry Ford Health System ("Henry Ford") unlawfully retaliated against her in violation of the Americans with Disabilities Act (the "ADA") and Michigan's Persons with Disabilities Civil Rights Act (the "PWDCRA"). (*See* Compl., ECF #1.)  On July 15, 2016, Henry Ford filed a motion for summary judgment (the "Motion"). (*See* ECF #13.)  The Court held a hearing on the Motion on December 2, 2016.  For the reasons stated below, the Motion is **GRANTED**.

## I

As explained below, the Court resolves the Motion on a narrow legal ground—that Dr. Hagelthorn did not engage in protected activity under the ADA or

1

PWDCRA.  The Court recites here in this Order only those facts relevant to that dispositive issue.  A full recitation of the entire factual background of the case is not necessary.

Henry Ford is a health care provider headquartered in Detroit, Michigan.  Dr. Hagelthorn worked as a neuropsychologist in Henry Ford's Center for Autism and Developmental Disabilities ("CADD") until May of 2014. (*See* Dr. Hagelthorn Dep. at 29-32, ECF #13-8 at 5, Pg. ID 144; Termination Letter, ECF #13-18 at 2, Pg. ID 195.)

Dr. Tisa Johnson-Hooper ("Dr. Johnson-Hooper") was the medical director of CADD. (*See* Dr. Johnson-Hooper Dep. at 6-8, ECF #13-4 at 3, Pg. ID 111.)  In that role, she participated in at least one of Dr. Hagelthorn's performance reviews. (*See* Dr. Bradley Merker Dep. at 28, ECF #16-12 at 7, Pg. ID 439.)

Within CADD, Dr. Hagelthorn supervised (among others) two Board Certified Behavior Analysts ("BCBAs") named Ian and Laura. (*See* Dr. Johnson-Hooper Dep. at 14, ECF #16-6 at 5, Pg. ID 381.)  Ian has a speech disfluency that causes him to stutter. (*See id.* at 39, ECF #16-6 at 12, Pg. ID 388.)

In March of 2014, CADD began preparing to film a promotional video that would feature a BCBA.  On March 25, 2014, Dr. Johnson-Hooper emailed Hagelthorn to inform her that she (Dr. Johnson-Hooper) had "suggested" (to those

who would be filming the video) that Laura appear as the BCBA in the video. (March 25-26 Emails, ECF #16-5 at 8, Pg. ID 375.)  Dr. Johnson-Hooper emphasized that she was "not overlooking Ian." (*Id.*)  Dr. Johnson-Hooper added that if Dr. Hagelthorn felt "Ian would be more appropriate," Dr. Hageltohorn should "let [Dr. Johnson-Hooper] know and [Dr. Johnson-Hooper would] forward" this preference to the team creating the video. (*Id.*)

Dr. Hagelthorn was on vacation when she received Dr. Johnson-Hooper's e-mail. (*See id.*)  In her reply to the e-mail, Dr. Hagelthorn requested that any decision concerning the casting of a BCBA in the video be postponed until she returned from vacation. (*See id.*)  Because the deadline to complete the filming was approaching, Dr. Johnson-Hooper replied to Dr. Hagelthorn that the video team would "move forward with Laura." (*Id.* at 7, Pg. ID 374.)  Dr. Johnson-Hooper added that "[i]f [Dr. Hagelthorn and the video team] decide when [Dr. Hagelthorn] returns [from vacation] that Ian should . . . be videotaped, this can be done at the later date." (*Id.*)  Dr. Johnson-Hooper explained that making the decision to cast Laura now (rather than awaiting Dr. Hagelthorn's return from vacation to finalize the BCBA casting decision) would "give Laura time to prepare her talking points." (*Id.*)

Despite Dr. Johnson-Hooper's instructions, Dr. Hagelthorn contacted the video team directly and instructed them to delay the production of the video until

she returned from vacation. (*See* Dr. Hagelthorn Dep. at 41, ECF #13-8 at 7, Pg. ID 146.)   That angered Dr. Johnson-Hooper.   In a March 26, 2014 e-mail to Dr. Hagelthorn, Dr. Johnson-Hooper expressed her "deep[] dissatisf[action] with [Dr. Hagelthorn's] behavior in response to [Dr. Johnson-Hooper's] decision about the CADD video clips." (March 26-27 Emails, ECF #16-23 at 2, Pg. ID 482.)

On March 27, 2016, Dr. Hagelthorn attempted to explain her actions in an e-mail to Dr. Johnson-Hooper. (*Id.*)  Dr. Hagelthorn wrote that her "concerns around the proposed videography were not preference; they were strongly rooted in proper management of diverse employees."  (*Id*.)  Dr. Hagelthorn added that she "had deep conviction around the appropriateness of [her] actions." (*Id*.)

Dr. Hagelthorn's relationship with Dr. Johnson-Hooper and other members of the CADD leadership team continued to deteriorate after the video casting incident. (*See* Dr. Johnson-Hooper Dep. at 40-43, ECF #13-4 at 6-7, Pg. ID 114-15.)  Henry Ford ultimately terminated Dr. Hagelthorn's employment on May 27, 2014. (*See* Termination Letter, ECF #13-18 at 2, Pg. ID 195.)  In its termination letter, Henry Ford stated that Hagelthorn was terminated because her "professionalism has steadily deteriorated over the past four months," and that she has "persistently required . . . clarification of the scope of [her] roles and responsibilities . . . . Despite

4

clear clarification, [she] has not been able to respect the boundaries of [her] position and show appropriate respect and regard for CADD leadership." (*Id.*)

In this action, Dr. Hagelthorn alleges that Henry Ford terminated her employment because she opposed Dr. Johnson-Hooper's decision to choose Laura (who did not suffer from a disability) rather than Ian (who did) for the CADD promotional video. (Compl., ECF #1 at 4-6, Pg. ID 4-6.) She contends that her termination constituted unlawful retaliation in violation of the ADA and the PWDCRA. (*Id* at 5-8, Pg. ID 5-8.)

## II

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.*

at 251-52.  Indeed, "[c]redibility determinations, the weighing of the evidence and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ."  *Id.* at 255.

## III

### A

Under the ADA's anti-retaliation provision, an employer "shall not discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a).  Similarly, under the PWDCRA, an employer "shall not retaliate or discriminate against a person because the person has opposed a violation of [the PWDCRA], or because the person has made a charge . . . under [the PWDCRA]."  M.C.L. § 37.1602(a).  "The PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim."  *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (citing *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)) (internal quotations marks omitted).  Dr. Hagelthorn agrees that the Court should analyze her ADA and PWDCRA claims together under the same standard.  (*See* Pl.'s Resp., ECF #16 at 22, Pg. ID 321.)

6

Here, Dr. Hagelthorn lacks direct evidence of retaliation. Therefore, "this Court analyzes [her] claim for retaliation using the *McDonnell-Douglas* burden shifting approach." *Rorrer v. City of Stow,* 743 F.3d 1025, 1046 (6th Cir. 2014) (ADA); *see also Aho v. Department of Corrections*, 688 N.W.2d 104, 108-09 (Mich. App. 2004) (PWDCRA). Under this approach, Dr. Hagelthorn "bears the initial burden to establish a prima facie case of retaliation, which requires a showing that (1) [she] engaged in activity protected under the ADA; (2) [Henry Ford] knew of that activity; (3) [Henry Ford] took an adverse action against [her]; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer*, 743 F.3d at 1046 (ADA); *see also Aho*, 688 N.W.2d at 108-109 (PWDCRA). If (and only if) Dr. Hagelthorn satisfies her prima facie case, a burden of production—i.e., to articulate a nondiscriminatory reason for its action—then shifts to Henry Ford. *E.E.O.C. v. Ford Motor Company*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc) (ADA); *see also Aho*, 688 N.W.2d at 109 (PWDCRA). If Henry Ford can provide such a reason, the burden then shifts back to Dr. Hagelthorn to prove that the reason is a pretext for retaliation. *See Ford Motor Company*, 782 F.2d at 767 (ADA); *Aho*, 688 N.W.2d at 109 (PWDCRA).

As explained below, Dr. Hagelthorn has failed to satisfy her prima facie case because she has not shown that she engaged in protected activity.  Thus, Henry Ford is entitled to summary judgment on Dr. Hagelthorn's retaliation claims.

## B

Dr. Hagelthorn claims that she engaged in protected activity when she opposed (in her March 25-27 emails) Dr. Johnson-Hooper's decision to include Laura rather than Ian in the CADD video. (*See* Pl.'s Resp., ECF #16 at 23, Pg. ID 322.)  Dr. Hagelthorn's opposition to Dr. Johnson-Hooper's video casting decision falls short of protected activity for at least two separate reasons.

First, Dr. Hagelthorn lacked the required state of mind for protected activity. An employee engages in protected activity when she "challenge[s] an employment practice that [s]he reasonably believe[s is] unlawful." *Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F.3d 634, 645 (6th Cir. 2015).[1]  "This

---

[1] In *Yazdian*, the Sixth Circuit was addressing a claim of retaliation under Title VII of the Civil Rights Act of 1964.  But the "essential framework" for retaliation claims under Title VII, the ADA, and the other "bodies of statutory law that allow retaliation claims" is "the same." *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (en banc).  Thus, it is appropriate for this Court to rely on *Yazdian* and other retaliation cases decided under other anti-discrimination statutes when construing the parameters of protected activity under the ADA and PWDCRA. *See, e.g.*, *Barret v. Lucent Technologies, Inc.*, 36 Fed. App'x 835, 841 (6th Cir. 2002) (relying upon Title VII case when assessing whether plaintiff engaged in protected activity under the ADA).

requirement includes objective and subjective components: the employee . . . must actually believe that the conduct complained of constituted a violation of relevant law, and a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee would believe the conduct complained of was unlawful." *Id.* at 646 (internal quotation marks omitted); *see also Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 1304, 1313 (6th Cir. 1989) (explaining that a "person opposing an apparently discriminatory practice" must "have a good faith belief that the practice is unlawful").[2]

Here, Dr. Hagelthorn admitted during her deposition that she "did not believe [Dr. Johnson-Hooper] was discriminat[ing]" against Ian when she chose Laura to appear in the promotional video. (Dr. Hagelthorn Dep. at 109-10, ECF #13-8 at 17, Pg. ID 156; *see also id.* at 64, ECF #13-8 at 12, Pg. ID 151.) Indeed, Dr. Hagelthorn

_____

[2] The Sixth Circuit in *Booker* was addressing the standard for protected activity under the anti-retaliation provision of Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA"). But the *Booker* standard applies beyond the ELCRA. The Sixth Circuit and this Court have applied the *Booker* standard to federal anti-retaliation statutes, including the anti-retaliation provision of the ADA. *See Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007) (applying *Booker* in defining protected activity under federal Age Discrimination in Employment Act); *McElroy v. Philips Medical Systems North America, Inc.*, 127 Fed. App'x 161, 171 (6th Cir. 2005) (applying *Booker* in defining protected activity under the participation clause of the anti-retaliation provision of the ADA); *Skrine v. Barrett Paving Materials, Inc.*, 2015 WL 5214636 at *14 (E.D. Mich. Sept. 4, 2015) (applying *Booker* in defining protected activity under Title VII.).

insisted that she "was *not* alleging discrimination." (*Id.* at 71, ECF #13-8 at 14, Pg. ID 153; emphasis added.) She explained that she opposed Dr. Johnson-Hooper's unilateral casting decision because she (1) wanted to avoid the possible "appearance of being discriminatory" and (2) she wanted to include her team in the casting decision-making process. (*Id.* at 71, 109, ECF #13-8 at 14, 17, Pg. IDs 153, 156.) Because Dr. Hagelthorn did not believe that Dr. Johnson-Hooper engaged in any unlawful discrimination, Dr. Hagelthorn's opposition to Dr. Johnson-Hooper's casting decision does not constitute protected activity.

Second, Dr. Hagelthorn's opposition to Dr. Johnson-Hooper's casting decision was too indefinite to constitute protected activity. The Sixth Circuit has explained that "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice," *Booker*, 879 F.2d at 1313, and Dr. Hagelthorn's opposition e-mails to Dr. Johnson-Hooper were (at most) vague allegations of discrimination. The only possible reference to discrimination in the e-mails is Dr. Hagelthorn's reference to the "proper management of diverse employees," but no reasonable reader of the e-mail would have understood that nebulous phrase as a reference to disability discrimination. Indeed, Dr. Hagelthorn confirmed that she "did *not* accuse Dr. Johnson-Hooper of being discriminatory." (Dr. Hagelthorn Dep. at 64, ECF #13-8 at 12, Pg. ID 151;

10

emphasis added.)  Given the indefinite wording of the e-mails and Dr. Hagelthorn's own testimony, there is no material factual dispute as to whether Dr. Hagelthorn's e-mails amounted to protected activity.  They did not.

### III

As a matter of law, Dr. Hagelthorn did not engage in protected activity under the ADA or PWDCRA.  Therefore, Henry Ford is entitled to summary judgment on Dr. Hagelthorn's retaliation claims under those statutes.

Accordingly, **IT IS HEREBY ORDERED** that the Motion (ECF #13) is **GRANTED**.


s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 9, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 9, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

11